UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**NANCY J. CHEAL,**
         Petitioner,

v.                                                                    Civ. No. 05-CV-10595

**UNITED STATES,**
         Respondent.

**MEMORANDUM OF LAW IN SUPPORT OF AMENDED MOTION
TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

I.  **FACTS**

The indictment in this case charged Nancy Cheal, now 66 years old, with five counts of mail fraud and two counts of wire fraud. The scheme as alleged in the indictment involved a solicitation for funds, with the promise that investors would receive a return of 100% per week, for twelve weeks, of all money loaned to the investment program. As the Petitioner explained at the plea hearing, this extraordinary rate of return was to have been realized by "one of seven" "world traders" in medium-term notes. The money was to have been used to purchase a bank which in turn was to have provided mortgages for low income families. (Plea Hearing, p. 24, 26.) As the Petitioner further explained, she believed that none of the investors' money would actually be risked in trades. Rather, she believed she would be using only her own money to trade, on account of a "gold certificate" in the amount of $250 million she believed had been issued to her

"from the refinery." (Plea Hearing, p. 28.) In the end, no "trading" occurred and no bank was purchased.

On October 10, 2002, the Petitioner changed her plea to guilty on all seven counts.

While a substantial portion of the checks and cash that were sent by investors was in fact recovered, much of it was not and the Court found an intended loss in excess of $2.5 million. Together with enhancements for more than minimal planning, mass marketing, misrepresentation regarding a charitable or religious organization, obstruction of justice, as well as a reduction for acceptance of responsibility, the Court arrived at an offense level of 29. The Petitioner disputed these enhancements, but interposed no objection to the Court making the predicate findings by a preponderance of evidence, in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). At Category I, offense level 29 yielded a sentencing range of 87-108 months; whereupon the Court imposed a sentence of 87 months. (Disposition, p. 25-26.)

Prior to sentencing, the Court had been provided with a report from Jeffrey Danzinger, MD, a psychiatrist who found that Mrs. Cheal, while competent and not legally insane, presented "with a variety of very bizarre ideas" and psychotic symptoms, including the delusional belief that her actions were morally justified, even though she knew that what she was doing was potentially in violation of law. In Dr. Danzinger's opinion, the Petitioner qualified for diminished capacity under the Guidelines. (Danzinger Report, p. 9.) While the Court did not agree that the Petitioner met the standard for a downward departure by reason of diminished capacity, the Court nonetheless agreed that the Petitioner had a peculiar view of the world, in which she honestly

believed she was helping people. Thus, the Court observed:

> To me there is no question that ... Ms. Cheal, you, defrauded large numbers of people. I am persuaded that there probably is another side. In some way, some strange way, I think you expected to help others, but that is not what you in fact did.

(Disposition, p. 26.)

This observation was made in the context of the Court's discussion of the constraints imposed by the Sentencing Guidelines:

> As I said before, the guideline range leads me to a sentencing - the guideline calculation leads me to a sentencing range of 87 to 108 months. I do not believe that any of the grounds advanced by the Defendant are sufficient for a departure. The arguments that have been made concerning the care of the children, I think are insufficient in and of themselves. There are other people within this family who theoretically at least can take care of the children. It is not – I do not think that the court is throwing them away by sentencing Ms. Cheal to jail.
>
> And given the sentencing rules, I sentence you to a term of imprisonment of 87 months.

(*Id*.)

Because neither the Petitioner's peculiar mental condition, nor her age, nor her family circumstances were deemed sufficient to justify a departure under the Guidelines, the Court had no choice but to impose a sentence within the Guideline range. The 87 month sentence imposed represented the low end.

Thereafter, with new counsel, the Petitioner appealed, raising four issues: (1) the compliance of her change-of-plea hearing with the requirements of Rule 11 of the Federal Rules of Criminal Procedure; (2) the evidentiary basis for the Court's enhancement for obstruction of justice; (3) the Court's failure to grant a downward departure on the basis of her alleged reduced mental capacity; and (4) the timeliness of the Court's entry of a restitution order. See, *United States v.*

*Cheal*, 389 F. 3d 35, 37 (1st Cir., 2004). No claim was made that the sentencing procedure violated *Apprendi*.

Following oral argument in the appeal, the Supreme Court decided *Blakely v. Washington*, 542 U.S. 296 (2004). Perhaps aware that any assertion of a *Blakely* error at that stage would have involved a futile claim of plain error, appellate counsel did not bring the new decision to the attention of the Court of Appeals. The Court made reference to this in footnote 10 of its opinion:

> The Supreme Court decided *Blakely v. Washington*, U.S. , 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), after oral argument in this case. Cheal has not submitted a letter of supplemental authority under Fed. R. App. P. 28(j) challenging her sentence based on Blakely's possible application to the federal sentencing guidelines. Consequently, we do not address the issue.

*United States v. Cheal*, 389 F. 3d 35, 45 n. 10 (2004).

The Court of Appeals affirmed, and the Petitioner now seeks relief pursuant to 28 USC §2255.

II.   **ARGUMENT**

   A.   **Trial Counsel's failure to object to the Court sentencing the Petitioner based on factual findings neither admitted by the Petitioner nor found by a jury beyond a reasonable doubt, denied the Petitioner effective assistance of counsel.**

In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Court affirmed that a major change in sentencing law was underway by holding that,

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.

*Apprendi* clearly implied that "statutory maximum" means the maximum

sentence that may be imposed absent additional fact finding by the sentencing judge. Thus in *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 2537 (2004), the Court explained,

> Our precedents make clear ... that the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose solely on the *basis of the facts reflected in the jury verdict or admitted by the defendant.* See *Ring, supra,* at 602, 153 L. Ed. 2d 556, 122 S. Ct. 2428 ("'the maximum he would receive if punished according to the facts reflected in the jury verdict alone'" (quoting *Apprendi, supra,* at 483, 147 L. Ed. 2d 435, 120 S. Ct. 2348)); *Harris v. United States,* 536 U.S. 545, 563, 153 L. Ed. 2d 524, 122 S. Ct. 2406 (2002) (plurality opinion) (same); *cf. Apprendi, supra,* at 488, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (facts admitted by the defendant). In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. (Emphasis in original.)

*Apprendi* was decided well before the Petitioner's guilty plea in this case. Yet, trial counsel made no objection to the Court basing its sentence, not on facts found by a jury beyond a reasonable doubt or admitted by the Petitioner, but on the basis of findings made by the Court by a preponderance of evidence. In failing to make this objection, the Petitioner was denied effective assistance of counsel.

In *Strickland v. Washington*, 466 U.S. 668, 686 (1984), the Court stated,

> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

Determination of the issue entails a two-step process:

> First, the defendant must show that the counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This

> requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.*, at 688. Here, both prongs of the test have been met.

No special prescience was necessary to see that the constitutional framework within which the Petitioner was sentenced was crumbling. As the Court itself described it, the line from *Jones v. United States*, 526 U.S. 227 (1999), to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), to *Blakely v. Washington*, 542 U.S. 296 (2004), and ultimately to *United States v. Booker*, 543 U.S. \_\_, 125 S. Ct. 738 (2005), traced a path on which "the requirements of the Sixth Amendment were clear." *Booker*, supra at 749. Thus the Court in *Booker* emphasized that it reached the result it did by,

> *reaffirm[ing]* our holding in *Apprendi*: Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.

*Id.*, at 756. (Emphasis added.) In large part, *Blakely* and *Booker* merely restated prior law. It was thus a serious omission of counsel not to object to the sentencing procedure on Fifth and Sixth Amendment grounds.

This omission had serious prejudicial consequences. Counsel's failure to raise a constitutional objection based on *Apprendi* effected a forfeiture (although not a waiver)[1] of the issue, with the result that on appeal the Petitioner would have been entitled only to plain error review. As the Court of Appeals explained in the related *Booker* context,

---

[1] "'Forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.' *Olano*, 507 U.S. at 733 (internal quotation marks and citation omitted)." *United States v. Antonakopoulos*, 399 F. 3d 68, 76, n. 7 (1st Cir., 2005).

> The argument that a *Booker* error occurred is preserved if the defendant below argued *Apprendi* or *Blakely* error or that the Guidelines were unconstitutional.... Here the defendant agrees that the *Booker* issue was not preserved, so at most he is entitled to plain-error review.

*United States v. Antonakopoulos*, 399 F. 3d 68, 76 (1st Cir., 2005). Because of this procedural posture, even if an *Apprendi* or *Blakely* claim had been pressed by appellate counsel for the first time on appeal, such a claim would have been futile. Under plain error review, the claim would have failed insofar as it was consistent with pre-*Blakely* precedent. *United States v. Barbour*, 393 F. 3d 82, 94 (1st Cir., 2004).

On the other hand, had the *Apprendi* issue been raised at sentencing, preserving the claim, a remand following the appeal would clearly have been in order. Where a Sixth Amendment objection has been made to a Guideline sentence, the Court "review[s] for harmless error, remanding for resentencing unless the government can show beyond a reasonable doubt that a lower sentence would not be imposed." *United States v. Gomez-Rosario*, 418 F. 3d 90, 109 (1st Cir., 2005).

Here, the government itself requested a low-end sentence, and acknowledged that given the circumstances of this case, 87 months was "a very significant sentence." (Disposition, p. 9.) Moreover, although a departure on grounds of diminished capacity was rejected, the Court was "persuaded that there probably is another side. In some way, some strange way," the Court stated, "I think you expected to help others, but that is not what you in fact did." (*Id.*, p. 26.) As additional grounds for departure, the Petitioner noted her poor health and responsibilities for raising infant grandchildren. (*Id.*, p 20-23.)

Although insufficient to justify a departure under mandatory Guidelines,

these circumstances would likely have resulted in a lesser sentence under a constitutional sentencing regime. Pursuant to 18 USC §3553(a), the Court is directed to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." These considerations would likely have led to a sentence lower than 87 months imposed in this case. See, e.g., *United States v. Hubbard*, 369 F. Supp. 2d 146 (D. Mass., 2005) Ponsor, J., (non-guideline sentence imposed on grounds of Defendant's diminished capacity and assistance to government); *United States v. Hernandez*, 2005 US Dist. LEXIS 10026 (SDNY, 2005) (non-guideline sentence imposed on grounds of Defendant's age, 49, and lack of criminal record).

The government cannot show, beyond a reasonable doubt, that in a sentencing scheme that complied with the Fifth and Sixth Amendments, a lower sentence would not have been imposed.

III.    CONCLUSION

As a result of an unconstitutional sentencing scheme, the Petitioner, a woman now aged 66, with no criminal record and with peculiar and delusional notions about the world, was sentenced to an extraordinarily lengthy sentence of 87 months. As a result of counsel's deficiencies, she has lost the opportunity to request a remand from the Court of Appeals for resentencing, consistent with the Fifth and Sixth Amendments. Because these deficiencies amounted to ineffective assistance of counsel, the Petitioner prays that her sentence be vacated, and that she be resentenced in a manner consistent with the United States Constitution.

9

                                              NANCY J. CHEAL  
                                              by his attorney,

Date:  11/3/05                   /s/ Matthew A. Kamholtz  
                                              Matthew A. Kamholtz  
                                              BBO #257290  
                                              FEINBERG & KAMHOLTZ  
                                              125 Summer St.  
                                              Boston, MA 02110  
                                              (617) 526-0700