UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NANCY J. CHEAL,                )
                Petitioner,    )
        V.                     )    Civ. No. 05-CV-10595
                               )
UNITED STATES OF AMERICA,      )
                Respondent.    )
_____)

GOVERNMENT'S OPPOSITION
TO NANCY J. CHEAL'S SECTION 2255 PETITION

Nancy Cheal is serving an 87-month sentence imposed by this Court on February 20, 2003. Her sentence was affirmed on appeal. United States v. Cheal, 389 F.3d 35 (1st Cir. 2004). She now seeks to have her sentence vacated pursuant to 28 U.S.C. § 2255 upon her assertion that trial counsel provided ineffective assistance. More particularly, she claims counsel was ineffective for failing to anticipate and preserve a Booker-type objection at the time of sentencing in February 2003, more thanb 2 years before Booker was decided.

The Government opposes the defendant's Section 2255 Petition. The claim of ineffective assistance cannot be sustained by the facts or the applicable law.

## I. BACKGROUND

On February 28, 2001, Nancy Cheal was charged in a seven-count indictment with defrauding numerous victims of more than $2.1 million in a large-scale investment fraud, in violation of 18 U.S.C. §§1341 and 2 (mail fraud), and 18 U.S.C. §§1343 and 2 (wire fraud).

The fraud operated by Cheal involved a sophisticated scheme to solicit "investments" through internet user networks and fax mailing lists. Cheal promised investors they would receive returns of 100% per week, for twelve weeks. She claimed that there was no risk involved to investors as their funds were to be used to establish a "bank" and would not be used for trading purposes. Rather, a purported $250 million "gold certificate" held by Cheal would fund actual trade activities. She claimed that the bank would provide low interest loans to the old and needy, from whom she had received "boxes of letters . . . with tear stains on them." [Plea Hearing, p. 23]. The incredible returns promised, she claimed, were made possible by the trading talents of one, Paul Holder, a man who in reality had never made a trade in his life and denied the business arrangement represented by Cheal. [Id. at 14-15.]

The details of Cheal's investment plan may readily seem absurd to the savvy investor and offend common-sense, but Cheal did not target skeptical or sophisticated individuals. She represented herself as the Minister of the Christian Complex Church in Bunnell, Florida and claimed to be operating her charitable investment program under the name Relief Enterprises. Cheal further lured her victims with promises that 100% of her own profits would go to "the little people."[Id. at 10]. Investors entrusted Cheal with amounts

both large and small, many stating that their contributions represented the last of their savings. [Sentencing Hearing, p. 10].

In fact, Cheal never made a trade, never directed anyone else to make a trade and never attempted to seek genuine investment advice. When returns did not materialize and investors began to inquire, Cheal fabricated excuses, all the while continuing to solicit additional funds and burning through the money she had already pocketed. When confronted by U.S. Postal Inspectors and asked to stop her solicitations and to return funds to investors, Cheal ostensibly agreed but in fact she merely modified her scheme to cover her tracks.  Cheal made a show of returning checks below $400 while keeping all the larger amounts.  Moreover, she enlarged her scheme by directing investors to re-send refunded amounts and to send future checks via FedEx and UPS courier for the specific purpose of avoiding Postal Inspection scrutiny. [Plea Hearing, at 12, 33-34].

On October 15, 2002, the first day of trial, Cheal pleaded guilty to the indictment.  In her plea colloquy, she admitted to the facts.  Nonetheless, Cheal was truculent throughout the proceedings, repeatedly attempting to avoid answering this Court's direct questions. [Id. at 34-38].[1]  She employed convoluted and

---

[1] This was specifically noted by the Government at the sentencing hearing: "[S]he would make a statement, you would ask her a pinpoint question about that, and she would shift, and she would tell you that she never engaged in any personal seeking of funds, and personal solicitations.  And then you would ask her questions, and some of the evidence would absolutely

contradictory efforts to justify her own "good intentions" while shifting to others. [Id. at 23-50].  While admitting the facts she nonetheless self-righteously attempted to shift blame to others. In one breath, she admitted to the charges and in the next, claimed that certain other individuals took advantage of her desire to help the needy. [Id. at 26-28].  At one point, Cheal went so far as to attempt to instruct the District Court regarding the U.S. Constitution. [Id. at 30].  This Court found that Cheal's own statements on the record, particularly when detailed from the tangible evidence, supported her guilty pleas. [Id. at 40-47, 50].

On February 20, 2003, this court conducted the sentencing hearing.  Cheal's previous statements at the plea proceeding formed the basis for application of six sentencing enhancements and a two point deduction for acceptance of responsibility. Defense counsel's stated objections to enhancements for obstruction of justice, loss in excess of $2.5 million, and organizer or leadership were all overruled on the grounds that the facts supporting each enhancement were admitted by the defendant in her plea colloquy.  This Court specifically noted:

> Well, the evidence as I heard it, as I heard Ms. Cheal, she was the one who thought up this idea.  She was the one who started communicating, who in fact did a lot of the communicating with respect to lenders,

---

contradict that, and you would follow up with a question to her. And then the next stage was: 'Well, I did that early on.'*** You would pin her down on a particular point, and then she would shift; and you would pin her down on that, and she would shift." Sentencing Hearing, at 11-12.

4

investors whatever they were.  I think that
she ran the show....

[Sentencing Hearing, at 8].

Upon consideration of the applicable factors, this Court found
the guideline sentencing range was from 87 and 108 months.  The
Government noted the defendant's age in recommending that a
sentence "at a minimum" at the bottom of the sentence range be
imposed, [Sentencing Hearing, at 14].[2]  The Government stated that
the sentence was "well deserved," based on the range of conduct
involved, including the defendant's refusal to cease the fraudulent
scheme even when confronted by Postal Inspectors, her refusal to
accept caution from others advising that the scheme was not lawful,
her heartlessly soliciting investments from people who said "You
are taking my last dollar," and her capitalizing on her position as
a pastor to trade on people's generosities.  [Sentencing Hearing,
at 9-10].[3]  In addition, the Government asserted that but for a
substantial sentence, Cheal would not be stopped, "not by natural
cause, not by law enforcement cause, [and] not by any moral cause,"
[Id. at 10] and "when she comes out of prison she will have some

---

[2] Not to put too fine a point on the matter, the Government submits that Petitioner
misreads the Government's recommendation.  In her Memorandum at p. 7, Cheal states "Here,
the government itself requested a low-end sentence...." In fact, the Government recommended
"at a minimum" a sentence of 87 months.

[3] Cf., 18 U.S.S.C. § 3553(a)(1) regarding the sentencing court obligation to consider "the
nature and circumstances of the offense and the history and characteristics of the defendant";
§3553(2)(A) regarding the need for the sentence imposed "to reflect the seriousness of the
offense...."

scheme in her head...." [Id. at 13].[4]  This Court noted that despite Cheal's world view and claimed intention to do good, she "in fact ended up defrauding very large numbers of people of very large amounts of money," [Id. at 26], justifying the 87 month sentence.  This Court also ordered Cheal to pay restitution.

Cheal filed an appeal challenging the validity of her plea colloquy, the application of certain sentencing enhancements and the order for restitution. The First Circuit rejected her appeal and affirmed both the validity of the plea and the sentence. United States v. Cheal, 389 F.3d 35 (1st Cir. 2004).

Cheal has filed a motion to vacate, set aside or correct her sentence pursuant to 28 U.S.C. § 2255.  She claims her prior counsel rendered ineffective assistance, in essence, by failing to anticipate future changes in the application of the U.S. Sentencing Guidelines.

## II. Argument

Cheal claims she was deprived of effective assistance of counsel because her sentence was based in part on facts neither admitted by the defendant nor found by a jury beyond a reasonable doubt and trial counsel did not enter an objection to court-based findings.

---

[4] Cf., 18 U.S.S.C. §3553(a)(2)(C) regarding the need for the sentence imposed "to protect the public from further crimes of the defendant."

Petitioner's claim is essentially that trial counsel's failure to enter a temporal "place holder" objection failed to preserve a constitutional objection, thereby limiting her rights to pursue an appeal in the event of future, potentially favorable, changes in the application of the sentencing guidelines.  In short, Petitioner faults trial counsel for failing to anticipate subsequent developments in Supreme Court jurisprudence.  This claim lacks legal or factual bases and must be denied.

**A.    The Strickland Standard**

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court articulated a two-part test to determine whether, in a particular case, an attorney's performance fell below the constitutionally required minimum. "To prevail on a claim that her counsel was ineffective for Sixth Amendment purposes, a defendant must show that counsel's performance was deficient, and that this deficient performance prejudiced the defendant." Strickland, 466 U.S. at 668.

Strickland defined the first element as requiring a "showing that counsel's performance fell below an objective standard of reasonableness, and was not reasonable under prevailing professional norms." Id.  The First Circuit has noted that the determination of whether counsel's performance was deficient requires the court to "evaluate the challenged conduct from counsel's perspective at the time, considering the totality of the

7

circumstances." <u>Lema v. United States</u>, 987 F.2d 48, 51 (1st Cir. 1993).

The defendant bears the burden of proof by a preponderance of the evidence on **both** parts of the <u>Strickland</u> test. <u>Cofske v. United States</u>, 290 F.3d 437, 441 (1st Cir. 2002); <u>Scarpa v. Dutsois</u>, 38 F.3d 1, 8 (1st Cir. 1999). The test has been characterized as "highly demanding." <u>Kimmelman v. Morrison</u>, 477 U.S. 356, 383 (1986). Furthermore, a reviewing court "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" <u>Strickland</u>, 466 U.S. at 689 (quoting <u>Michel v. Louisiana</u>, 350 U.S. 91, 100-101 (1955); <u>Lopez-Nieves v. United States</u>,917 F.2d 645, 649 (1st Cir. 1990).

Moreover, the reviewing court should bear in mind that the Sixth Amendment "does not guarantee a defendant a letter-perfect defense or a successful defense," <u>United States v. Natanel</u>, 938 F.3d 302, 309 (1st Cir. 1991), but only "a fair trial and a competent attorney." <u>Engle v. Isaac</u>, 456 U.S. 107, 134 (1982).

In order to prove prejudice from the alleged ineffective assistance, the petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable

probability is a probability sufficient to undermine confidence in the outcome." Williams v. Taylor, 529 U.S. 362, 390 (2000).

**B.    *Apprendi* was not applicable at Cheal's sentencing**

Cheal was sentenced in February of 2003. The §2255 Petition is based on the assertion that trial counsel should have entered an Apprendi objection, in anticipation of future Supreme Court decisions. However, Apprendi was not applicable to Cheal's sentencing and failure to object on an inapplicable basis cannot support a claim of ineffective assistance.

In Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), the defendant received a 12 year sentence as a result of the application of a "hate crime" enhancement, increasing the penalty two years over the statutory maximum of 10 years. The Court held that "other than the fact of a prior conviction, any fact that increases a penalty for a crime beyond a statutory maximum must be submitted to a jury." Id. (emphasis added). Under Apprendi, the relevant maximum sentence is the "statutory maximum."

It was not until Booker in 2005, several years after the conclusion of this case, that the Supreme Court suggested that the maximum in Apprendi-like situations may be interpreted as the "guideline maximum." See Booker v. United States, 543 U.S. 220 (2005). Until the Booker *dicta* suggested this interpretation, courts held that sentences imposed within the "statutory guideline range" and under the statutory maximum do not raise Sixth Amendment

9

issues. See, e.g., <u>United States v. Piccolo</u>, 282 F.3d 41, 43-44 (1st Cir. 2002); <u>United States v. Duarte</u>, 246 F.3d 56, 60 (1st Cir. 2001); <u>United States v. Robinson</u>, 241 F.3d 115, 120 (1st Cir. 2001); <u>United States v. Baltas</u>, 236 F.3d 27, 41 (1st Cir.2001).

<u>Apprendi</u> applies only when the disputed "fact" enlarges the applicable statutory maximum and the defendant's sentence exceeds the original maximum. For this reason, <u>Apprendi</u> simply does not apply to guideline findings ... that increase the defendant's sentence, but do not elevate the sentence to a point beyond the lowest applicable statutory maximum. In other words, even after <u>Apprendi</u>, the existence *vel non* of sentencing factors that boost defendant's sentence but do not trip a new statutory maximum remain grist for the district judge's [factfinding] mill under a preponderance-of-the-evidence standard. <u>Piccolo</u>, 282 F.3d at 43-44.

Cheal was convicted on five counts of mail fraud and two counts of wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. Each count carried with it a statutory maximum sentence of five years. The District Court sentenced Cheal to seven years, well below the statutory maximum and therefore not within the realm of <u>Apprendi</u>. Trial counsel's decision not to raise an <u>Apprendi</u> objection did not constitute ineffective assistance as the objection was simply unavailable under contemporary understanding of the law and the facts of this case. Indeed, <u>Apprendi</u> still has

10

no application to this case.  On this basis alone, the §2255 Petition should be denied.

**C.  <u>Counsel's performance cannot be found ineffective<br>for failure to anticipate changes in law</u>**

There is no general duty on the part of defense counsel to anticipate changes in the law. <u>See</u> <u>Powell v. United States</u>, 430 F.3d 490, 491 (1st Cir. 2005)(the case law is clear that an attorney's assistance is not rendered ineffective because he failed to anticipate a new rule of law). The Sixth Circuit has specifically declared that "competence, not prescience, is what the constitution requires." <u>United States v. Bradley</u>, 400 F.3d 459, 463 (6th Cir. 2005); <u>see also</u> <u>United States v. Gonzalez-Lerma</u>, 71 F.3d 1537, 1542 (10th Cir. 1995)("clairvoyance is not a required attribute of effective assistance of counsel."). The Eleventh Circuit describes these cases and others as creating "a wall of binding precedent that shuts out any contention that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel." <u>United States v. Ardley</u>, 273 F.3d 841, 993 (11th Cir. 2001).

When considering whether defense counsel's failure to preserve <u>Apprendi</u> arguments in anticipation of subsequent changes to pre-<u>Booker</u> sentencing practice constitutes ineffective assistance of counsel, circuits that have addressed the issue have not considered foresight a necessary attribute of effective counsel. In an analogous Sixth Circuit case, the Court noted that such an

ineffective assistance of counsel claim "hinges on showing that counsel acted unreasonably in failing to predict two Supreme Court decisions (<u>Blakely</u> and <u>Booker</u>) . . . [and] as a matter of law, there is simply no basis for [the petitioner's] assertion that his counsel's failure to predict this novel line of authority 'fell below an objective standard of reasonableness.'" <u>Unites States v. Burgess</u>, 142 Fed. Appx. 232, 241 (6th Cir. 2005)(citing <u>Strickland</u> at 687-688); <u>see</u> <u>also</u> <u>Fuller v. United States</u>, 398 F.3d 644, 651 n.4 (7th Cir. 2005)(noting in dictum that any argument that trial counsel was ineffective for failing to anticipate <u>Blakely</u> or <u>Booker</u> would not be tenable).  While the First Circuit has yet to address this issue directly, the District Court for the District of New Hampshire held in a similar case that counsel's failure to anticipate <u>Blakely v. Washington</u> and <u>United States v. Booker</u> does not qualify as ineffective assistance of counsel. <u>Frost v. United States</u>, 2005 WL 331470 (D.N.H. 2005)(Barbadoro, J.).

Here, petitioner claims that trial counsel's decision not to make an <u>Apprendi</u> objection at sentencing, despite the fact that such a claim was unavailable, constitutes ineffective assistance of counsel.  The petitioner asks this Court to require trial counsel to connect-the-dots between contemporary case law and future, indeed novel, Supreme Court decisions.

Cheal would have this Court require, retroactively, that Cheal's trial counsel overlook not only the specific wording of the

Supreme Court decision in <u>Apprendi</u> but all temporal First Circuit articulations of the meaning of "statutory maximum" as well, all in order to preserve an <u>Apprendi</u> claim for future <u>Booker</u> error review.[5]  Trial counsel exercised correct professional judgement in light of contemporary case law in deciding not to raise an <u>Apprendi</u> claim; therefore, that decision cannot be considered ineffective assistance of counsel as there is no expectation of such prescience in this or any other jurisdiction.

Petitioner's memorandum in support of her § 2255 motion faults both trial and appellate counsel for failing to preserve an <u>Apprendi</u> objection and, on appeal, failing to file a post-argument supplement regarding <u>Blakely</u>.  As discussed above, at the time of sentencing, <u>Apprendi</u> was not interpreted to apply where a sentence did not exceed a statutory maximum, thus barring any claim that failure to object on <u>Apprendi</u> grounds in this case constitutes a deficiency.  On this further basis, Cheal's §2255 Petition should be denied.

Furthermore, <u>Blakely</u>, decided two months after the close of argument in Cheal's appeal, did not represent a departure from the law under <u>Apprendi</u> from which appellate counsel had a basis to

---

[5] "The argument that a <u>Booker</u> error occurred is preserved if the defendant below argued <u>Apprendi</u> or <u>Blakely</u> error . . . ." <u>United States v. Antonakopoulos</u>, 399 F.3d 68, 76 (1st Cir. 2005).

reconsider trial counsel's decision not to raise such a claim.[6]
Cheal concedes as much, when her Amended Petition at ¶¶ 12-13 notes
the <u>Blakely</u> decision and states:

> Due to trial counsel's failure to object on
> Fifth and Sixth Amendment grounds to the
> sentencing procedure, any claim for relief in
> the Court of Appeals would have been a futile
> claim of plain error.

As discussed above, there was no "failure" to raise an <u>Apprendi</u>
claim in the district court because <u>Apprendi</u> simply was not
applicable.  Cheal concedes that absent an <u>Apprendi</u> claim in the
district court, the <u>Blakely</u> decision did not provide an additional
basis for constitutional challenge to her sentence in the Court of
Appeals.

Furthermore, as with trial counsel, appellate counsel could
not be charged with "clairvoyance" to predict the novel line of
authority created in the Supreme Court's <u>Booker</u> decision.

Appellate counsel, having no obligation to raise every
possible claim, was within the realm of reasonable conduct in
deciding to rely on other issues on direct appeal. See <u>Yarborough
v. Gentry</u>, 124 S.Ct. 1 (2003)(Sixth Amendment guarantees reasonable
competence, not perfect advocacy judged with the benefit of
hindsight).  Because counsel is entitled to exercise professional

---

[6] In <u>Blakely</u>, the Supreme Court restated its holding in <u>Apprendi</u>, clarifying that "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." <u>Blakely v. Washington</u>, 542 U.S. 296, 303-304 (2004).

14

judgement, a defendant must show that a sentencing enhancement challenge on direct appeal "was so obvious and promising that no competent lawyer could have failed to pursue it." United States v. Cirilo-Munoz, 404 F.3d 527, 530 (1st Cir. 2005)(quoting Arroyo v. United States, 195 F.3d 54, 55 (1st Cir. 1999).

Even at this late date, the potential viability of a sentencing error is entirely dependent upon an application of Booker and its progeny. As Cheal's appellate counsel did not have the benefit of post-Booker hindsight, the temporal decision not to raise Blakely pre-Booker issues constituted reasonable conduct in light of the state of the law. Petitioner Cheal is therefore unable to establish, much less by a preponderance of the evidence, that an Apprendi or Blakely challenge was so "obvious" or "promising" on appeal that counsel's decision not to pursue such claims fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688.  On this further basis, the Section 2255 Petition should be denied.

D.  **Booker error, if any, is not retroactive**

Petitioner Cheal did not make any Booker-type arguments in the District Court or in the First Circuit. Because Booker does not apply retroactively, Cirilo-Munoz, 404 F.3d at 533, habeas petitions under 28 U.S.C. § 2255 are "unavailable to advance Booker claims." United States v. Fraser, 407 F.3d 9, 11 (1st Cir. 2005). In Cirilo-Munoz, the First Circuit noted that if Booker were

determined to be retroactive, it would "open up to required reexamination practically all of the federal sentences imposed since the guidelines went into effect in 1987. This would comprise tens of thousands sentences imposed under a regime whose lawfulness was assumed during most of this period." <u>Cirilo-Munoz</u>, 404 F.3d at 533. As noted above, the First Circuit has allowed an exception to the general rule wherein a <u>Booker</u> error argument may be preserved only if the defendant argued <u>Apprendi</u> or <u>Blakely</u> error at sentencing or on direct appeal. <u>See</u> <u>Antonakopoulos</u>, 399 F.3d at 76.

In an example of "heaping Pelion on Ossa"[7] Cheal attempts to create a basis for ineffective assistance review by bootstrapping from an [unavailable] <u>Apprendi</u> claim through a <u>Blakely</u> claim to a <u>Booker</u> claim to an <u>Antonakopoulos</u> sentence review. In the case at hand, however, Cheal could not and thus did not raise <u>Apprendi</u> or <u>Blakely</u>, effectively barring application of the <u>Antonakopoulos</u> exception. Nevertheless, in her memorandum in support of her § 2255 Petition, Cheal attempts to circumvent this bar by arguing ineffective assistance of counsel arising from <u>Apprendi</u>. Even if a failure to predict a novel change in law could constitute ineffective assistance of counsel, applying such a claim to overcome the procedural bar would open the door to hordes of

---

[7] *Virgil Georgies* i. 281.

similar arguments, contradicting the policy articulated by the
First Circuit in Cirilo-Munoz. Again, Cheal's Petition should be
denied.

**E.    A claimed Booker error is subject only to a non-constitutional harmless error analysis**

Even assuming that Cheal's counsel had possessed the gift of
prophesy to preserve a Booker claim, the government's burden on
appeal would only have been to show that the error was harmless,
not to prove beyond a reasonable doubt that the error did not
affect Cheal's substantial rights. See United States v. Anderson,
452 F.3d 87, 92-93 (1st Cir. 2006). In evaluating a claim of
harmless error, the standard of proof "depends on whether the error
is conceived of as constitutional." United States v. Vasquez-
Rivera, 407 F.3d 476, 489 (1st Cir.), cert. denied, 126 S. Ct. 279
(2005). Where the preserved error is constitutional, the
government must prove beyond a reasonable doubt that the error did
not affect the defendant's substantial rights. Anderson, 452 F.3d
at 93. But where the error is not constitutional, the government
must demonstrate "the absence of any 'grave doubt' regarding the
harmlessness of the error." Anderson, 452 F.3d at 93, quoting
Vazquez-Rivera, 407 F.3d at 489; see Kotteakos v. United States,
328 U.S. 750, 765 (1946)(reviewing for non-constitutional error,
the court will uphold conviction if it can be said "that the
judgement was not substantially swayed by the error," even if error
had occurred).

17

The Supreme Court in <u>Booker</u> found that the Sixth Amendment was violated by the mandatory application of sentencing enhancements that are based on judicial fact-finding. 543 U.S. at 244. Rather than require jury findings on Guideline sentencing enhancements, the Court chose to excise 18 U.S.C. § 3553 (b) (1), the provision of the Sentencing Reform Act that made the Guidelines mandatory, and 18 U.S.C. § 3742 (e), which set the standards for appellate review. <u>Booker</u>, 543 U.S. at 245-246, 259. These modifications, the Court stated, rendered the Guidelines "effectively advisory," eliminating the Sixth Amendment problem. <u>Id</u>. at 245.

Cheal claims that the underlying error in this case is that the Court sentenced her under mandatory guidelines with enhancements determined by judge-found fact. The enhancements recognized by the District Court were based upon admissions made by petitioner Cheal in her plea colloquy. The First Circuit held that the District Court committed no error in applying the enhancements, <u>Cheal</u>, 389 F.3d at 45, and found that the objections made to the Pre-Sentence Report (PSR) were "merely rhetorical and unsupported by countervailing proof. . . [allowing] the district court to rely on the facts in the PSR." <u>Id</u>. at 37 (citing <u>United States v. Cyr</u>, 337 F.3d 96, 100 (1st Cir. 2003)).

Even if <u>Booker</u> were found to apply in Cheal's case, the error, if any, would be limited to the fact that Cheal was sentenced under the mandatory guidelines, a non-constitutional <u>Booker</u> error subject

18

to the non-constitutional harmless error standard of review, as most of the Courts of Appeals that have considered the issue have held. See, e.g., United States v. Shepard, 462 F.3d 847, 873 (8th Cir.) cert. denied, 127 S. Ct. 838 (2006); United States v. Houston, 456 F.3d 1328, 1339-1340 (11th Cir. 2006); United States v. Sullivan, 455 F.3d 248, 265-266 (7th Cir. 2006) (King, J. concurring) United States v. Benq-Salazar, 452 F.3d 1088, 1095 (9th Cir. 2006); United States v. Gonzalez-Huerta, 403 F.3d 727, 731-732 (10th Cir.) (en banc), cert. denied 126 S. Ct. 495 (2005).

In Anderson, the First Circuit noted that it had not decided whether Booker error arising out of the mandatory application of the guidelines alone is "constitutional in nature" and thus subject to review under the constitutional harmless error standard or the non-constitutional harmless error standard. Anderson, 452 F.3d at 92-93. The Court declined to address the issue, finding the Booker error harmless under either standard. Id. In most preserved Booker error cases, the First Circuit has merely accepted, without discussion or analysis, that Booker claims are subject to the constitutional harmless error standard. See Vazquez-Rivera, 425 F.3d at 489; see also United States v. Casas, 425 F.3d 23, 59-60 (1st Cir. 2005); United States v. Fornia-Castillo, 408 F.3d 52, 73-74 (1st Cir. 2005). In the Government's view, the proper standard here is non-constitutional harmless error, given the absence of a Sixth Amendment error.

**F.  <u>If any Booker error occurred, it was harmless error</u>**

The First Circuit has said that in assessing error in the context of <u>Booker</u> claims, its "focus is primarily upon what was known at the time of sentencing." <u>United States v. Lata</u>, 415 F.3d 107, 113 (1st Cir. 2005). In the context of unpreserved <u>Booker</u> error, the Court looks for proof of a reasonable probability that the district court would have given the defendant a lower sentence under the advisory guidelines "in the existing record or by plausible proffer."[8] <u>United States v. Heldman</u>, 402 F.3d 220, 224 (1st Cir. 2006); <u>see United States v. Sanchez-Berrios</u>, 424 F.3d 65, 80 (1st Cir. 2005)(requiring, in context of plain error review, that the defendant "point to specific indicia" of the required reasonable probability); <u>Cf</u>. <u>Vazquez-Rivera</u>, 407 F.3d at 489. (Where the defendant has preserved his <u>Booker</u> claim below, the court then examines whether the government has established "that a lower sentence would not have been imposed had the Guidelines been advisory.")

In sentencing Cheal, this Court noted that Cheal "ended up defrauding very large numbers of people of very large amounts of money." [Sentencing Hearing, p. 26]. This Court rejected all of Cheal's objections to the guideline enhancements and the First Circuit affirmed.  Additionally, this Court rejected Cheal's

---

[8] In the government's view, analysis of error must be from the record in the district court, and not on any subsequent proffer outside the record on appeal.

request for a downward departure based on diminished mental capacity and alleged child-care concerns [Id. at 20-24]. The First Circuit noted on appeal that Cheal did not make a request for an evidentiary hearing regarding her diminished mental capacity claim, asserting that "at a bare minimum, he who expects to receive a discretionary dispensation must first seek it. Thus, the failure to ask the district court to convene an evidentiary hearing ordinarily spells defeat. . . ." Cheal, 389 F.3d at 45 (quoting United States v. Tardiff, 969 F.2d 1283, 1286 (1st Cir. 1992)).

The Court's statements and actions at sentencing establish that it would not have imposed a more lenient sentence under an advisory Guidelines regime. See, e.g., United States v. Benedetti, 433 F.3d 111, 119 (1st Cir. 2005). The Court heard and rejected Cheal's request for a downward departure, and stated specifically that the guidelines required "at least 87 months." [Sentencing Hearing at 26]. It was the Government that recommended "at a minimum" the lowest sentence available under the guidelines, stating that "87 months is entirely appropriate and richly deserved." [Id. at 14]. See Benedetti, 433 F.3d at 119 (finding Booker error harmless because, inter alia, the court "expressly declined to grant discretionary downward departures. . . ."); United States v. Melendez-Torres, 420 F.3d 45, 51-52 (1st Cir. 2005)(finding Booker error harmless where court denied defendant's downward departure requests); see also United States v. Morrisette,

429 F.3d 318, 325 (1st Cir. 2005)(stating that it "ordinarily ha[s] refused to order post-<u>Booker</u> remands where ... the district court had before it all the evidence material to these [departure] factors, yet demonstrated no inclination to consider them as grounds for departure."). This amply demonstrated "the absence of any 'grave doubt' regarding the harmlessness of the error." <u>Anderson</u>, 452 F.3d at 93.

Given the lack of anything in the record that suggests that this Court would have sentenced Cheal more leniently under advisory guidelines, trial counsel's and/or appellate counsel's "failure" to preserve a <u>Booker</u> claim did not make counsel's performance deficient.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Government asks this Court to deny petitioner Cheal's motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255.

Respectfully submitted this 3rd day of August, 2007.

MICHAEL J. SULLIVAN
United States Attorney


By:  <u>/s/ Diane C. Freniere</u>
DIANE C. FRENIERE
Assistant U.S. Attorney


By:  <u>/s/ Victor A. Wild</u>
VICTOR A. WILD
Assistant U.S. Attorney


22

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system
will be sent electronically to the registered participants as
identified on the Notice of Electronic Filing (NEF) and paper
copies will be sent to those indicated as non registered
participants.

                            /s/ Victor A. Wild
                            VICTOR A. WILD
                            Assistant United States Attorney